UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PATRICIA A. PERRY,                                        Case No. 6:15-cv-02386-YY

                           Plaintiff,                     OPINION AND ORDER

        v.

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

YOU, Magistrate Judge:

        Plaintiff, Patricia A. Perry ("Perry"), seeks judicial review of the final decision by

the Commissioner of Social Security[1] ("Commissioner") denying her claim for Title XVI

Supplemental Security Income ("SSI") benefits under the Social Security Act.  This court

has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3).  All parties have consented to allow a Magistrate Judge to enter final orders and

judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C.

---

[1]  The official title of the head of the Social Security Administration, and the proper
defendant in this case, is the "Commissioner of Social Security."  42 U.S.C. § 902(a)(1).

§ 636(c).  For the reasons set forth below, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

## ADMINISTRATIVE HISTORY

On August 5, 2008, Perry applied for SSI, alleging disability beginning January 1, 2004.  Tr. 17, 114–20.[2]  Her application was denied initially and denied on reconsideration.  Tr. 78–79.  Perry then requested a hearing which was held on September 21, 2009.  Tr. 34–77.  On December 23, 2009, Administrative Law Judge Michael Gilbert issued a ruling that Perry was not disabled.  Tr. 14–26.  The Appeals Council denied a request for review on July 5, 2011.  Tr. 1–4.

On September 2, 2011, Perry filed suit against the Commissioner seeking review of the Commissioner's final decision.  *Perry v. Comm'r Soc. Sec. Admin.*, 3:11-cv-01067-BR.  On October 3, 2012, District Judge Anna J. Brown found that the Commissioner had properly refused to give controlling weight to a 2009 opinion of Perry's treating doctor, Michael Potter, M.D., because the ALJ "properly concluded that Dr. Potter's treatment notes do not support his conclusion that [Perry] is disabled due to pain from arthralgia."  *Id.*, Opinion and Order ("O&O"), ECF #18, p. 22.  However, Judge Brown also concluded the Commissioner erred by failing to "include the limitations of no repetitive manipulation and no prolonged standing," *id*, p. 23, and by "failing to resolve conflicts in the medical evidence concerning [Perry's] ability to perform repetitive motion, handling, and standing for extended periods."  *Id.*, p. 31.  Accordingly the court directed the Commissioner to

---

[2]  Citations are to the page(s) indicated in the official transcript of the record filed on June 21, 2016 (ECF #11 (Tr. 1–494) and #12 (Tr. 495–979)).

obtain a consultative physical capacities assessment and remanded the case for further proceedings.

On August 5, 2014, Administrative Law Judge Mary Kay Rauenzahn ("ALJ") held another hearing. Tr. 599–627. On November 13, 2014, the ALJ issued a decision finding Perry not disabled. Tr. 576–89. The Appeals Council denied review on October 26, 2015. Tr. 553–56. The ALJ's November 13, 2014 decision is therefore the Commissioner's final decision subject to review by this court. 20 C.F.R. §§ 416.1481, 422.210.

## BACKGROUND

Born in 1969, Perry was 34 years old on her alleged onset date and 44 years old at the time of the second hearing. Tr. 603. Perry has a GED but has not completed any college credits or vocational training. Tr. 45, 604. Perry is capable of reading and writing English and performing basic math. Tr. 45–46. Perry has volunteered as a secretary, worked as custodian, and worked at a recycling center. Tr. 46–48. She alleges disability due to the combined impairments of nerve problems, numbness, chronic ulcers, edema in both legs, memory problems, Hepatitis B and C, anxiety, and depression. Tr. 84, 123.

## FIVE-STEP INQUIRY

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R § 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

At step one, the ALJ determines if the claimant can engage in substantial gainful activity. 20 C.F.R § 416.920(a)(4)(i) & (b). If the claimant can engage in substantial gainful activity, then the claimant is not disabled. *Id.*

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 C.F.R § 416.920(a)(4)(ii) & (c). Absent a severe impairment, the claimant is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 C.F.R § 416.920(a)(4)(iii) & (d), 20 C.F.R Pt. 404, Subpt. P, App. 1 ("Listing of Impairments"). If a claimant's impairment meets or equals one of the impairments in the Listing of Impairments, the ALJ will determine the claimant is disabled regardless of their medical condition, age, education, or work experience. 20 C.F.R. § 416.920(d).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by their impairments. 20 C.F.R § 416.920(e), Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 C.F.R § 416.920(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. 20 C.F.R § 416.920(a)(4)(v) & (g).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180

F.3d at 1098. If the inquiry reaches step five, the burden shifts to the Commissioner to

show that jobs exist in the national economy within the claimant's RFC. *Id.* If the

Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R

§§ 416.920(a)(4)(v) & (g), 416.960(c).

## ALJ'S FINDINGS

At step one, the ALJ concluded that Perry had not engaged in substantial gainful

activity since her application date of August 5, 2008. Tr. 578.

At step two, the ALJ determined that Perry has the severe impairments of cervical

degenerative disc disease (status post fusion), hepatitis C (status post interferon treatment),

small fiber neuropathy, depression with anxiety, substance abuse disorder, mild obesity,

obstructive sleep apnea, and fibromyalgia. *Id.*

At step three, the ALJ determined that Perry's impairments do not meet or medically

equal an impairment in the Listing of Impairments, and assigned the following RFC:

> [T]he Claimant has the [RFC] to perform a limited range of light
> exertion work with lifting and carrying of 20 pounds occasionally and
> 10 pounds frequently and sitting about six hours of an eight-hour
> workday, but with standing and/or walking two hours of an eight-hour
> workday. The claimant must be able to alternate between sitting and
> standing every 30 minutes while remaining on task. She can
> frequently, not constantly or repetitively, handle and finger bilaterally.
> She can occasionally reach in all directions. [She] can occasionally
> balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She
> can never climb ladders, ropes, and scaffolds or be exposed to
> workplace hazards such as unprotected heights or dangerous
> machinery. [She] can understand, remember, and carry out only
> simple instructions that can be learned in 30 days or less. She can
> have occasional public contact but should not work directly with the
> public. [She] can have occasional coworker contact with no group
> tasks. She cannot have exposure to alcohol or drugs in the workplace.
> The work cannot involve production line pace work.

Tr. 582.

At step four, the ALJ determined that Perry had no past relevant work experience, but had at least a high school education and was able to communicate in English. Tr. 588.

At step five, based on the testimony of a vocational expert ("VE") (Tr. 620–26), considering Perry's age, education, work experience, and RFC, the ALJ determined that Perry could perform three light exertion, unskilled jobs existing in significant numbers in the national economy and identified in the Dictionary of Occupational Titles ("DOT") as a "Sorter" (DOT 713.684-018), "Laundry sorter" (DOT 361.687-014), and a "Inspector" of small products (DOT 559.687-074). Tr. 589.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, *i.e.* such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The entire record must be considered as a whole and the court "may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882 (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Conversely, the reviewing court may not substitute its judgment for that of the

Commissioner.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1205 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007)).  Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)); *see also Lingenfelter*, 504 F.3d at 1035.

## DISCUSSION

Perry argues the ALJ erred by: (1) providing insufficient reasons to reject the treating physician's opinion, and (2) not meeting her burden at step five.

## I.  Treating Physician's Opinion

### A.  Legal Standards

The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians.  *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted).  Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted).  Additionally, "the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (internal regulatory citations omitted).  "[I]f a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight."  *Id*. (citation omitted).  However, "'the ALJ need not accept the

opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Lingenfelter*, 504 F.3d at 1044–45 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

If a treating doctor's opinion is uncontroverted, the ALJ may not reject it without presenting clear and convincing reasons supported by substantial evidence. *Reddick,* 157 F.3d at 725 (citation omitted). If a treating doctor's opinion is contradicted by another doctor's opinion, the ALJ can only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted). The ALJ "can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). It is not enough for the ALJ to simply offer conclusions. *Reddick*, 157 F.3d at 725. Instead, the ALJ must set forth his or her own interpretations and explain why they, instead of the treating physician's, are correct. *Id.* Further, if a treating physician's opinion is contradicted by another doctor, the ALJ must determine credibility and resolve the conflict. *Valentine*, 574 F.3d at 692.

### B.     Dr. Potter's Findings

Dr. Potter has been Perry's treating doctor since 2003. In 2005 and 2009, Dr. Potter made brief chart notes opining on Perry's ability to work. Tr. 226, 471–72. In 2013, he also completed a questionnaire ("2013 Questionnaire") sent to him by Perry's attorney in anticipation of the second administrative hearing. Tr. 903–05.

Dr. Potter's 2005 chart note states that "[Perry's] disability issues would be job restrictions of no prolonged standing, squatting, kneeling. Sitting activities would be fine.

No repetitive manipulation with the hands because of hand symptoms." Tr. 226. His 2009

chart note ("the 2009 Opinion"), states that Perry's chronic joint pain prevents her from

working, and that there was "[n]o course other than analgesic control and activity limitation

to ameliorate symptoms." Tr. 472. As noted above, this court previously concluded that the

2009 Opinion was not entitled to controlling weight, but remanded this case so the

Commissioner could resolve discrepancies in the medical evidence concerning Perry's

ability to perform repetitive motion, handling, and standing for extended periods. O&O,

p. 31.

In the 2013 Questionnaire, Dr. Potter calculated an RFC for Perry by checking a

series of boxes and filling in blanks on a variety of physical limitations. Tr. 903. Dr. Potter

indicated Perry could occasionally lift/carry up to ten pounds, frequently lift/carry less than

ten pounds, stand and walk for thirty minutes for a total of two hours in an eight-hour day,

and sit for two hours at a time for a total of four hours in an eight hour day. Tr. 904. The

remainder of the eight hours would have to be spent reclining or laying down. *Id.* Perry

could never climb, balance, stoop, bend, kneel, crouch, and crawl, but could occasionally

reach overhead, reach at shoulder level, handle (gross manipulation), and finger (fine

manipulation). *Id*. Dr. Potter estimated that Perry would be unable to perform even simple

work tasks 50% of the time, and expected Perry would miss sixteen hours or more a month

due to her combination of pain, psychiatric condition (depression and anxiety), and fatigue

which all require a greater than normal need for rest and recovery. Tr. 905.

### C. <u>Analysis</u>

The ALJ gave several reasons for discounting Dr. Potter's opinions. First, the ALJ

surmised that, if Perry condition were as limiting as found by Dr. Potter, the ALJ would have

expected Dr. Potter to increase her medication dosage, change her medications, or perhaps refer Perry to a specialist or a counselor:

> [Dr. Potter's] assertion that mental impairments contribute so greatly is inconsistent with the treatment record that is limited to medication management by Dr. Potter. Were these impairments so problematic, it would be reasonable to expect the physician to alter the claimant's prescription by increasing doses or changing medications or to refer the claimant for additional treatment with a more specialized prescribing source and for counseling.

Tr. 587.

An ALJ is charged with evaluating the medical evidence, but is not a medical expert and may not substitute his or her opinion for that of a physician. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). To the degree the ALJ's decision speculates about possible treatment choices Dr. Potter should have explored, such as increasing Perry's medication dosages, changing her medications, or referring her for additional medical or psychiatric evaluations, the ALJ's opinion exceeds permissible bounds. Such medical opinions by an ALJ provide no basis for rejection of a treating doctor's opinions. To the limited degree the ALJ's statements may be interpreted as pointing out an internal inconsistency between Dr. Potter's treatment record and his management of Perry's medications, the ALJ's statements are so generalized as to similarly provide no basis for rejecting Dr. Potter's opinion. An ALJ errs by rejecting a medical opinion without offering "a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1013. Accordingly, the ALJ's decision must be evaluated without regard to the ALJ's comments regarding possible other treatment options.

The ALJ also rejected Dr. Potter's 2013 assessment because it was at odds with Perry's reported ability to engage in certain activities and unsupported by recent medical records:

The limitations assessed are also inconsistent with the claimant's reports of being able to engage in several different forms of exercise and her response to treatment with Cymbalta (Ex. 34F/22–25; 37F/1). The complete ban on the postural activities is at odds with the claimant's stated independence in daily activities—while her combination of impairments call for some restrictions, her ability to do household chores and self-care, as well as swim, dance and use an elliptical trainer, shows that she is more capable than Dr. Potter asserts. The most recent records do not show complaints of fatigue that Dr. Potter states is so limiting (Ex. 46F). For these reasons, the July 20l3 assessment is given little weight.

Tr. 587.

The reference by the ALJ to a "complete ban on the postural activities" appears to be a reference to Dr. Potter's assessment that Perry should never engage in climbing, balancing, stooping/bending, kneeling, crouching, and crawling. Tr. 904. The difficulty with the ALJ's criticism of Dr. Potter's assessment is that the records cited by the ALJ reveal that the exercises performed by Perry are part of her treatment plan. The "healthy lifestyle plan" noted in Dr. Potter's chart includes "swimming, dancing, elliptical" and healthy eating. Tr. 865. Moreover, the cited records give no indication that Perry's activity level—either in the form of household chores or in exercises—is inconsistent with the restrictions endorsed by Dr. Potter. To the contrary, the hearing testimony reveals a disconnect between what the ALJ assumed was involved in Perry's exercise routine and what she testified regarding what she was in fact doing. Based on the references to Perry's prescribed exercises, the ALJ described Perry as "really active," to the point she "could swim, dance, and workout on [her] elliptical." Tr. 612. However, Perry described her exercises as recommended by her rheumatologist and explained that they started with her trying to "focus on five minutes of movement at a time," building up to the point where she could "get on elliptical." *Id*. As for the "aerobic dance," that consisted of "minimal . . .

water aerobics for some of us older not so health[y] people." Tr. 613. In sum, these two reasons do not support discounting Dr. Potter's opinions.

Despite these errors, however, a review of the entire record reveals that the ALJ did not err in rejecting certain restrictions endorsed by Dr. Potter in the 2013 Questionnaire. Dr. Potter opined that Perry would have to spend two hours per day reclining or lying down. Additionally, he opined that Perry would be unable to perform even simple work tasks 50% of the time. Tr. 905. The ALJ included RFC restrictions in excess of those recommended by the state agency consultants, but less than those endorsed by Dr. Potter. In particular, the ALJ did not include any requirement that Perry be able to recline or lie down, and instead limited Perry to standing and walking two hours and included a requirement for a sit/stand option "to assist in maintaining comfort." Tr. 587. With regard to maintaining focus on work tasks, the ALJ credited the opinion of state agency non-examining psychological consultants from September 2008 and January 2009 finding that Perry "could carry out simple routine tasks in an independent environment." Tr. 588.

The ALJ points out that the same problems noted in this court's prior O&O continue to be an issue, including a lack of treatment notes supporting Dr. Potter's conclusions. Tr. 586. Additionally, the ALJ cites long gaps in treatment, including nine months in 2010, six months in 2011, and over seven months from 2012 into 2013. *Id*. The ALJ also relies on the fact that no treating source has mentioned that Perry needs to elevate her legs and that Dr. Potter's treatment records are limited to medication management. Tr. 586–87. Check-off reports that do not "contain any explanation of the bases of their conclusions" may properly be rejected. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)) (remaining citation omitted). The 2013

Questionnaire endorses significant restrictions, offering only the explanation that the combination of Perry's "pain, psychiatric condition (depression/anxiety) and fatigue requires greater than typical need for rest and recovery as well as reduced exertional capacity." Tr. 905. This one-line explanation stands in stark contrast to the long periods without treatment and the lack of treatment records substantiating the limitations Dr. Potter endorses with regard to needs for reclining or elevating legs, and being unable to perform even the simplest work tasks 50% of a work day. Finally, the ALJ notes that Perry's independence in daily activities is inconsistent with the limitations endorsed by Dr. Potter. Daily activities "indicating capacities that are transferable to a work setting" provide a legitimate basis for rejecting claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

In April 2013, Dr. Andrea Marshall ("Dr. Marshall") conducted a disability examination of Perry. Tr. 814–19. Perry also underwent a functional capacity evaluation with Christopher Park, OTR, on June 28, 2013. Tr. 827–38. After reviewing the record with regard to the specific impairments alleged by Perry (Tr. 583–84), the ALJ discussed these most recent evaluations at length, noting the discrepancies between those evaluations and the limitations endorsed by Dr. Potter. Tr. 584–85. Dr. Marshall noted that Perry "made easy transfers, she sat comfortably, and was able to remove her shoes without difficulty." Tr. 819. The ALJ found Dr. Marshall's examination "significant" in that it "show[ed] [Perry had] an ability to perform movements that Dr. Potter asserted [she] could not." Tr. 585. The ALJ noted Mr. Park's observations and reports of daily activities, finding that his assessment supported the conclusion that Perry is capable of a range of light

exertion work.  *Id*.  Finally, the ALJ noted that the recent medical records do not support the complaints of fatigue that Dr. Potter states are so limiting.  Tr. 587.

This court concludes that the ALJ did not err in rejecting Dr. Potter's assessment to the extent it endorses restrictions beyond those identified by the ALJ's RFC analysis.  The ALJ's evaluation of the evidence reflects a thorough and rational reading of the record and is upheld.

## II.  <u>Step Five</u>

At step five, the burden of proof shifts to the Commissioner to demonstrate that the claimant can engage in substantial gainful activity that exists in significant numbers in the national economy. This requires the ALJ to consider the claimant's RFC, age, education, and work experience.  20 C.F.R. § 416.920(f).  The step five analysis requires assessment of the medical evidence, the claimant's daily activities, prior work record, functional restrictions and limitations, medication and other treatment for relief of symptoms, and evidence from physicians and third parties.  20 C.F.R. § 416.929.  The ALJ may satisfy the Commissioner's burden under step five either through use of the Medical Vocational Guidelines ("the Grids") or with testimony from a VE.    20 C.F.R. § 416.966.

If the VE's hypothetical occupation does not reflect all of the disability claimant's limitations, including pain, the VE's testimony has "'no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'"  *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).  Further, if there is a conflict with the VE's recommendation, the ALJ must resolve the conflict, and make findings about how the conflict was resolved, before relying on the

testimony to find that a claimant is not disabled. *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.18 (9th Cir. 2007).

At the administrative hearing, the VE testified that Perry could work as bench-worker (DOT #713.684-018), laundry sorter (DOT #361.687-014), and inspector (DOT #559.687-074). Tr. 589. The ALJ relied on the VE's testimony, in combination with the fact that Perry did not have relevant past work, and determined that Perry could perform the suggested jobs. Tr. 588.

Perry argues the ALJ's reliance on the jobs recommended by the VE was inconsistent with the DOT. In making disability determinations, the Commissioner relies "primarily on the DOT (and its companion publication, the [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO")]." SSR 00-4P, 2000 WL 1898704 (December 4, 2000). All three jobs proposed by the VE and relied on by the ALJ in finding Perry not disabled require frequent reaching. In contrast, the ALJ calculated Perry's RFC as limited to only occasional reaching. Tr. 582, 587.

Before relying on the testimony of a VE, an ALJ has an "affirmative responsibility to ask about any possible conflict between [the VE's testimony] and information provided in the DOT." SSR 00-4P at *4. When faced with such a conflict, the "adjudicator will obtain a reasonable explanation for the apparent conflict." *Id*. The jobs identified by the VE have physical demands exceeding the RFC determined by the ALJ and given in the hypothetical questions propounded to the VE at the hearing. *See* Tr. 621. The ALJ asked the VE whether her opinions were consistent with the DOT, to which the VE responded that they were "in general" consistent, and that she had reviewed the occupational listings in the Occupational Network Database ("O*NET"). Tr. 625–26. O*NET is "a database that the

Department of Labor developed to replace the now-defunct DOT and that has cross-references to the old DOT listings." *Abbott v. Astrue*, 2010 WL 3075267 at *5 (7th Cir. 2010) (citing O*NET Online, http://online.onetcenter.org (last accessed June 13, 2017)). Neither the ALJ nor the VE discussed the inconsistency evident between the reaching requirements listed in the SCO and the reaching limitation imposed in the RFC.

The Commissioner argues that the VE's testimony does not conflict with the DOT, but instead supplements it. In particular, the Commissioner points out that the DOT is silent as to how frequently the identified jobs require "*overhead*" reaching and also does not contemplate the effect of "*differing reaching limitations between extremities, whether dominant or non-dominant*." Defendant's Brief (ECF #18), p. 10 (emphasis added). However, those distinctions make no difference, given that the RFC limits Perry to occasional reaching "in all directions" and hints at no ability to "frequently" reach, whether overhead or with a particular extremity. Tr. 582. To the contrary, the ALJ's decision expressly identified the limitations on reaching and manipulative activities as necessary to prevent exacerbation of Perry's cervical impairment and fibromyalgia pain by avoiding "placing additional stress on the neck . . . [and] avoid[ing] excessive use of the hands that could exacerbate neuropathic symptoms." Tr. 587. Such limitations plainly conflict with a job requirement of "frequent" reaching. The VE did not provide any testimony regarding how the jobs she identified stacked up against the restrictions in the hypothetical questions, except with regard to the availability of a sit/stand option. Tr. 626. To the degree the VE provided any such testimony, it is readily distinguishable from the supplemental testimony at issue in *Johnson v. Shalala*, 60 F.3d 1428, 1436 (9th Cir. 1995) (supplemental testimony regarding claimant's ability to perform particular jobs in particular geographic region).

This court also rejects the Commissioner's suggestion that Perry should have raised this issue at the administrative hearing. The step five burden is on the Commissioner, not the claimant. It is the ALJ's affirmative duty to develop the record with regard to conflict between VE testimony and the requirements of particular jobs. Similarly, it is the ALJ's burden to explain how any conflict was resolved: "SSR 00-4P . . . explicitly requir[es] that the ALJ determine whether the expert's testimony deviates from the [DOT] and whether there is a reasonable explanation for any deviation." *Massachi*, 486 F.3d at 1153 (further noting that SSR 00-4P postdates and "goes one step further" than the decision in *Johnson*). The evident inconsistency between the restrictions in the RFC assigned by the ALJ and the physical requirements in the jobs identified by the VE went unexplained and this court concludes that it was error for the ALJ to rely on those jobs without resolving that conflict.

## III.  <u>Remand</u>

Perry asks the court to remand for an immediate award of benefits, emphasizing the lengthy adjudicative process and failure of the ALJ to reconcile the RFC with the jobs she found Perry could perform. While this court is mindful of the years-long process Perry has endured, this case suffers from the same defect as in *Massachi*, namely "an apparent conflict with no basis for the vocational expert's deviation." 486 F.3d at 1154 n. 19. Accordingly, this court concludes that the same resolution is in order, namely remand for further proceedings applying the requirements of SSR 00-4P at step five.

### <u>ORDER</u>

For the reasons discussed above, the Commissioner's decision is REVERSED and REMANDED for further proceedings at step five, pursuant to sentence four of 42 USC § 405(g). This case is remanded so that the ALJ can apply the requirements of SSR 00-4P

and determine whether there is a reasonable explanation for the inconsistency between the jobs identified by the VE and the information in the DOT and the SCO.

DATED this 14th day of June, 2017.

/s/ Youlee Yim You
_____
Youlee Yim You
United States Magistrate Judge